**Exhibit H**

 Neutral

As of: December 14, 2019 8:17 PM Z

# Sands v. Bauer Media Grp. USA, LLC

United States District Court for the Southern District of New York

September 18, 2019, Decided; September 18, 2019, Filed

17-cv-9215 (LAK)

**Reporter**

2019 U.S. Dist. LEXIS 160421 *; 2019 U.S.P.Q.2D (BNA) 351350; 2019 WL 4464672

STEVE SANDS, Plaintiff, -against- BAUER MEDIA GROUP USA, LLC, Defendant.

**Subsequent History:** Later proceeding at Sands v. Bauer Media Grp. USA, LLC, 2019 U.S. Dist. LEXIS 182980 (S.D.N.Y., Oct. 22, 2019)

Motion denied by, Dismissed by, Motion granted by Sands v. Bauer Media Grp. USA, LLC, 2019 U.S. Dist. LEXIS 205558 (S.D.N.Y., Nov. 26, 2019)

## Core Terms

images, licensing, infringed, photographs, video, discovery, fair use, declaration, cases, partial summary judgment, documents, sanctions, underwear, Walking, damages, posted, costs, lace, Dog, settlements, Shooting, shot, web

**Counsel:** [*1] For Plaintiff: Richard Liebowitz, Yekaterina Tsyvkin, Liebowitz Law Firm PLLC.

For Defendant: Terence P. Keegan, David S. Korzenik, MILLER KORZENIK SOMMERS RAYMAN LLP.

**Judges:** Lewis A. Kaplan, United States District Judge.

**Opinion by:** Lewis A. Kaplan

## Opinion

### MEMORANDUM OPINION

LEWIS A. KAPLAN, *DISTRICT JUDGE.*

Digital imaging and the Internet are among the wonders of our age. In combination, they permit the virtually instant and worldwide electronic dissemination of high quality images that can be, and often are, copied and redisseminated by others. Nonetheless, this circumstance has created problems for professional photographers and publishers of

Sands v. Bauer Media Grp. USA, LLC

images that were unimaginable in the relatively recent past. It has led also to the creation of a lawyer business model that has deluged this Court with photographic copyright infringement cases since early 2016.

This deluge is attributable to plaintiff's counsel in this case, Richard Liebowitz. According to the Court's records, Mr. Liebowitz, who was admitted to practice in this Court in October 2015, filed 1,110 lawsuits in this Court from the beginning of 2016 through September 16, 2019. That is an average of more than one new case on every day the Court has been open for [*2] business. Each and every one of those 1,110 cases has been a copyright infringement suit. Many - probably all or nearly so - have been brought on behalf of photographers who assert that their images have been infringed by Internet web sites and other publishers. This case is part of the downpour.

Of course, photographers who create copyrighted images should be fairly compensated for their work. Those who infringe by using such images in violation of the rights of a copyright holder should be held to account. On the other hand, as I noted in a prior case, "[t]here may well be justification for [the] implication [that a significant portion of the 1,110 cases]. . . [have been] strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement."[1] Indeed, another judge of this Court has referred to Mr. Liebowitz as a "copyright troll" - one who is

"more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick [*3] settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim."[2]

Moreover, Mr. Liebowitz has been sanctioned, reprimanded, and advised to "clean up [his] act" by other judges of this Court. As Judge Furman recently observed, "there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz."[3] And that is what I am asked to do here by defendant's motion to dismiss the action as a sanction for alleged discovery misconduct or, alternatively, to strike portions of the evidence that plaintiff has submitted in support of a motion for summary judgment or require a bond as security for costs and fees pursuant to Local Civ. R. 54.2.

*Facts*

This case concerns two images allegedly taken by plaintiff Steve Sands of the well known

---

[1] *Konangataa v. Am. Broadcasting Cos.*, Nos, 16-cv-7382, 7383 and 7472 (LAK), 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067, at *2 (S.D.N.Y. June 21, 2017). *See also, e.g., Pereira v. 3072541 Canada Inc.*, No. 17-cv-6945 (RA), 2018 U.S. Dist. LEXIS 195406, 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) (describing Mr. Liebowitz's litigation tactics as "an apparent attempt to increase costs and to extort unwarranted settlements").

[2] *McDermott v. Monday Monday, LLC*, No. 17-cv-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018); *see also Reynolds v. Hearst Communs., Inc.*, No. 17-cv-6720 (DLC), 2018 U.S. Dist. LEXIS 35453, 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018).

[3] *Rice v. NBC Universal Media, LLC*, No. 19-cv-447 (JMF), 2019 U.S. Dist. LEXIS 114690, 2019 WL 3000808 (S.D.N.Y. July 10, 2019) (citing *Pereira*, No. 17-cv-6945 (RA), 2018 U.S. Dist. LEXIS 195406, 2018 WL 5999636, at *2; *McDermott*, No. 17-CV-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, 2018 WL 5312903, at *2-3; *Steeger v. JMS Cleaning Servs., LLC*, No. 17-cv-8013 (DLC), 2018 U.S. Dist. LEXIS 42797, 2018 WL 1363497, at *3 (S.D.N.Y. March 15, 2018); *Craig v. UMG Recordings, Inc.*, No. 16-cv-5439 (JPO), 380 F. Supp. 3d 324, 2019 WL 1432929, at *10 (S.D.N.Y. Mar. 29, 2019)).

model, Emily Ratajkowski.

*The Shooting of the DKNY Campaign Video and the Capture of the Allegedly Infringed Images [\*4]*

It appears that Ms. Ratajkowski was engaged by or on behalf of the women's wear company, DKNY, to appear in a video commercial promoting a new line of intimate wear and related products that was to be introduced in connection with the hash tag #GoodMorning DKNY. Plaintiff Sands, a professional photographer who allegedly had nothing to do with shooting the commercial,[4] captured two or more still images of Ms. Ratajkowski, apparently as she was performing, posing, or rehearsing for the video. He claims to hold copyright in the still images he took, as distinguished from the images on the commercial or any others shot on behalf of DKNY or others.

On January 19, 2017, the day before the photo shoot, Ms. Ratajkowski posted on her Instagram account a photo of herself clad only in underwear and reclining on a sofa or ottoman. Her accompanying [\*5] comment stated "Secret project in NYC today . . . coming to you March 2017."[5]

On the following day, January 20, 2017, Ms. Ratajkowski posted to her Instagram a photo of herself in lace underwear to which plaintiff claims copyright,[6] It appeared with the description "Shooting today in NYC mid-January in 40 degree weather in MY UNDERWEAR. Working hard lol" followed by three emoji. Based on a screengrab of this photo submitted by defendant - the post at issue is no longer on Instagram - no photo credit appears alongside the photograph. The post made no reference to plaintiff.[7]

On January 28, Ms. Ratajkowski posted another photograph of herself to Instagram holding a cup of coffee and wearing what appears to be the same lace underwear. Again based on defendant's screengrab, the photographis uncredited and the posting makes no reference to plaintiff.[8]

The record is unclear as to how Ms. Ratajkowski obtained those two images - images allegedly shot by Mr. Sands - in order to have been able to post them on her Instagram account, in one case on the very day it was taken.

*The DKNY Campaign Goes Public*

The DKNY campaign - and, in particular, the video shot on January 20 - went fully public on [\*6] or about March 13, 2017. The video commercial appears on Instagram and remains available on web sites.[9]

The commercial opens with Ms. Ratajkowski lying in bed clad only in lace underpants. She arises, dons a lace bra, leaves an apartment, and

---

[4] Cpt. ¶ 7 & Ex. A.

  Mr. Sands asserts that he had nothing to do with making the video and was not hired by anyone to photograph Ms. Ratajkowski that day. He states that he understood that she was shooting a commercial for DKNY that day and that "[s]he was in public view at the time I photographed her and she could have been photographed by anyone." Sands Decl. (DI27) ¶¶ 4-5.

[5] Ans. 11 n.2 & Ex. B, at 3.

[6] *Id.* Ex. B, at 2.

[7] *Id.*

[8] *Id.* Ex. B, at 1.

[9] *E.g.* https://www.usmagazine.com/stylish/news/emily-ratajkowski-walks-hendog-in-bra-underwear-for-dkny-w471860/ (last visited Sept. 11, 2019).

walks a dog down a New York street clad only in boots and the lace underwear. The video closes with her looking into the camera and saying "good morning New York."

The video, its promotional use by DKNY, and images of Ms. Ratajkowski as she appeared in the video were eye catching and unusual. While it often is said that "anything can happen in New York," that is an exaggeration. The frequency with which attractive models of any gender walk their dogs down New York City streets clad - in the dead of winter - only in lace underwear is virtually non-existent. Reasonable triers of fact reasonably could conclude that the events depicted in the video and in Mr. Sands' images, and the use to which images of those events was being put, were newsworthy.[10]

Defendant Bauer Media Group USA LLC ("Bauer") operates the web site FHM.com. FHM.com was among the many media outlets that ran stories about the DKNY video on March 13, 2017, its story being entitled *Emily Ratajkowski's New DKNY Ad Is Just Her Walking A Dog In Lingerie*.[11] The article was accompanied by a set of photographs that included the two images in which plaintiff claims copyright. The article reported and commented on the release of the DKNY video.

---

[10] *E.g.*, Sammy Nickalls, *Emily Ratajkowsi Walks Her Dog in Lingerie, as One Does: Anything Can Happen in New York!*, Esquire (Mar. 13, 2017) (available at https://www.esquire.com/style/mens-fashion/news/a53836/emily-ratajkowski-lingerie/) (last visited Sept. 11, 2019); Jamie Feldman, *DKNY's Unrelatable Ad Shows Emily Ratajkowski Walking Her Dog in Lingerie*, Huffpost (Mar. 13, 2017) (available at https://www.huffpost.com/entry/emily-ratajkowski-bra_n_58c6d59ee4b0598c66986d93) (last visited Sept. 11, 2019); Alex Ungerman, *Emily Ratajkowski Walks Dog in [*7] NYC Wearing Nothing but Lingerie for DKNY - Watch!*, AOL (Mar. 13, 2017) (available at https://www.aol.com/article/entertainment/2017/03/13/emily-ratajkowski-walks-dog-in-nyc-wearing-nothing-but-lingerie/21884545/) (last visited Sept. 11, 2019).

[11] Ans. ¶ 11 &Ex. A.

It attributed each of the photos on its web page including the two allegedly infringed Sands images, both of which had appeared on Ms. Ratajkowski's January Instagram posts - to "Instagram/emrata,""emrata" being Ms. Ratajkowski's Instagram handle.[12]

*Prior Proceedings*

*Discovery*

This action was commenced in December 2017. The Court held an initial pretrial conference on February 6, 2018, during which Bauer expressed its intention to raise a defense of fair use, plaintiff announced a $25,000 settlement demand, and Bauer stated its wish to litigate the matter - if necessary - in a speedy and efficient manner, so that the prospect of substantial legal fees would not effectively force it to **[*8]** accede to plaintiff's demand regardless of the merit and value of the claim. It was abundantly clear at the conference that the licensing history of the two allegedly infringed photos would be highly relevant to any disposition of the case. They would be relevant to, perhaps among other issues, (1) one of the key factors bearing on Bauer's fair use defense, the impact of the alleged infringement on the market for plaintiff's work, and (2) plaintiff's claim for actual damages, which were demanded in the complaint in addition to statutory damages.

Mr. Sands' counsel, a former associate of Mr. Liebowitz, readily represented at the conference that plaintiff had licensing history information for these photographs and that plaintiff would produce it. Independent of that representation, Sands was obliged by Rule 26(a)(1)(A) to identify anyone with information

---

[12] *Id.*

on documents that Sands might use to support his claims. Rule 26(a)(1)(A) certainly covered information concerning any licensing history of these photos given their relevance to the actual damages claim and their potential utility to plaintiff in meeting the fair use defense. In any case, the Court directed both sides to produce the required Rule 26(a) disclosure on or before **[*9]** March 9, 2018.[13] In addition, Bauer subsequently sought information concerning the

licensing history of the allegedly infringed photographs through requests for production of documents.[14]

Sands' Rule 26(a) disclosure identified only himself as a person likely to have such information. The documents he produced, while containing some information about other photos, contained absolutely nothing before the close of discovery concerning any licensing history of the allegedly infringed photos.[15]

*Sands' Partial Summary Judgment Motion Reveals Some Licensing History*

On September **[*10]** 7, 2018, after the close of discovery, Sands moved for partial summary judgment as to liability, which involved among

other things seeking summary judgment of dismissal of Bauer's fair use and other defenses. The motion was supported by declarations of Messrs. Sands and Liebowitz and a Ms. Halperin.[16]

Mr. Sands' declaration asserts that he licensed the two allegedly infringed photos to Getty Images on the day the images were shot, January 20, 2017, and one of the two (called the Dogwalk Photo) to Matrix Pictures, a UK stock agency.[17] He attaches to the declaration as Exhibit C copies of screen shots from the Matrix web site showing the Dogwalk Photo and others taken on the same occasion and offering them for license.[18] Mr. Sands has submitted no documentary evidence of his alleged licensing of these two photos to Getty Images or Matrix.[19]

Mr. Sands' declaration makes it abundantly clear that he was aware of his alleged licensing of his own two allegedly infringed photos — in the case of Getty from January 20, 2017 onward and in the case of Matrix from whenever he concluded that license. Yet he failed to identify either Getty or Matrix in his Rule 26(a) disclosure despite the fact that they, to Sands' **[*11]** certain knowledge, were persons with information that Sands might use in support of his claims — as indeed he used them in support of his motion for partial summary judgment.

Following the filing of the Sands motion for partial summary judgment, Bauer filed the present motion to dismiss and sought a stay of briefing of the Sands motion pending the

---

[13] DI 16, DI 17.

[14] Keegan Decl. ¶ 10.

The document request is not of record, but Bauer's counsel asserts that it called for this information. Plaintiff does not dispute this. He does, however, claim in an unsworn statement in his memorandum that "Sands produced all documents in his possession that were responsive to Bauer's requests. [Sands Declr. 11]." DI 43, at 30. In fact, however, paragraph 11 of Mr. Sands' declaration reads, in its entirety: "At the time I took the Photographs, I personally observed other photographers on the scene taking photographs of Ms. Ratajkowski." DI 27, ¶ 11. The declaration nowhere addresses either Bauer's document request or Sands' response to it.

[15] Keegan Decl. ¶¶ 8, 11.

---

[16] The latter two are immaterial for purposes of the matters now before the Court.

[17] Sands Decl. (DI 27) ¶¶ 12-14.

[18] *Id.* & Ex. C.

[19] It of course is highly likely that he has such documentation.

disposition of this one. Bearing in mind that the resolution of this motion could moot the Sands motion, the Court granted that stay.

## Discussion

Bauer contends that the conduct of Sands and his counsel warrants dismissal as a sanction under Fed. R. Civ. P. 16(f), 26(e), 37(b), and/or 37(c).[20] Alternatively, it seeks to have the Court strike Mr. Sands' licensing-related testimony and exhibit from his declaration, preclude him from asserting that the allegedly infringed photos had any licensing history or economic value, and require him, pursuant to Local Civ. R. 54.2, to post a bond in the amount of $50,000 to satisfy any judgment in Bauer's favor for costs and attorney's fees under Section 505 of the Copyright Act.[21]

The failure of Mr. Sands and his counsel, Mr. Liebowitz, to identify Getty and Matrix violated their obligations under Rule 26(a). Indeed, they so concede, calling it "a mere oversight of counsel amounting [*12] to no more than simple negligence."[22] As will appear, however, this likely was more than a mere oversight, and it should have consequences.

Rule 37(c)(1) provides:

> "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

The sanctions available under Rule 37(b)(2)(A)(i)-(vi) include, among other things, dismissal of an action and prohibiting the offender from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.

The standards governing determination of sanctions issues under Rules 26 and 37(c), as outlined by the Second Circuit, are straightforward:

> "In determining whether the District Court abused its discretion in imposing the sanction under [*13] Rule 37, we are governed by the standard set forth in Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006). In Patterson, two defendants violated Rule 26(a)(3) by not timely disclosing the names of witnesses they planned to call at trial. Id. at 117. The District Court granted the plaintiff's motion to preclude, except as to one witness who was named in the original complaint and whose testimony reasonably could have been anticipated. Id. On appeal to this Court, we held that "[i]n determining whether the district court acted within its discretion, this Court [must] consider[ ] '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness [es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a

---

[20] DI 40, at 6-7.

[21] 17 U.S.C. § 505.

[22] DI 43, at 34 (citation and internal quotation marks omitted).

continuance.'" *Id.* (citing *Softel, Inc. v. Dragon Med. & Scientific Commc 'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)) (brackets in *Patterson*). Thus, although a "bad-faith" violation of . . . Rule 26 is not *required* in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply."[23]

*First*, plaintiff's excuse for the failure to identify Getty and Matrix is lame. He concedes that he was obliged to do so, but contends instead in his [*14] unsworn memorandum his failure was "a mere oversight of counsel amounting to no more than simple negligence."[24] But neither plaintiff Sands nor his counsel has submitted any affidavit or declaration to support his readily advanced excuse under oath. Moreover, they certainly had a motive to withhold the licensing history of these photographs for as long as possible. As Bauer argues:

> "Withholding licensing information for the Photos kept alive the possibility that Bauer would tire of litigation expenses and give in to Sands' shakedown — a classic "copyright troll" strategy in line with the hundreds of other cases brought by Sands' counsel in this District, if not the dozens of cases filed on Sands' own behalf."[25]

Equally important, this not the first time that Mr. Liebowitz has gotten into difficulty in this Court for what at best often is a slap dash approach to pursuing the enormous volume of cases of this nature that he has filed.[26] A "mere oversight" that happens once or twice is one

thing. A pattern of discovery and related abuse is quite another, and rings of deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner in each and [*15] every case he handles. And if the attorney has filed a deluge of cases, such that his workload is too great to discharge that obligation, the volume of cases must be reduced to a number that may be managed responsibly or the number of responsible and competent attorneys tasked with handling it must be increased.

In sum, plaintiff has offered no satisfactory excuse for his failure to comply with Rules 26(a) and (e).

*Second*, the testimony of Getty and Matrix is likely to prove important to the proper resolution of this case. Among Bauer's defenses is that of fair use. The Copyright Act provides that:

> "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of [*16] the use upon the potential market for or value of the copyrighted work."[27]

---

[23] *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

[24] DI 43, at 34 (citation omitted).

[25] Def. Reply Mem. [DI 49], at 6.

[26] *See* note 3, *supra*.

[27] 17 U.S.C. § 107.

Sands v. Bauer Media Grp. USA, LLC

As the Second Circuit wrote recently:

> "In fair use litigation, courts undertake a "case-by-case analysis" in which each factor is considered, "and the results [are] weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994). The factors are non-exclusive, but consideration of each is mandatory. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014). Some of the factors are more important than others, with the fourth (market impact) being "the single most important element." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)."[28]

Getty and Matrix allegedly are licensed to sublicense not only the two allegedly infringed photos, but other photos from the same startling event, as well as still others of Ms. Ratajkowski. Accordingly, they almost certainly have evidence bearing substantially on the potential market for or value of the allegedly infringed photos in particular, others similar to them, and the effect, if any, of infringement on the potential market for the images. Similar evidence from them would have a significant bearing on any actual damages (which plaintiff demands in the complaint along with statutory damages) as well as on the determination of any statutory damages.

*Third*, plaintiff's withholding [*17] of this information has prejudiced Bauer, a fact that comes into clear focus when one considers the unusual context in which this conduct occurred.

From the very outset, defendant's objective — as it made clear in the initial conference with the Court and its adversary — was to dispose of this case with a minimum investment of time and effort. It was on that basis that the discovery plan agreed and decided upon included only limited and only written discovery followed, if appropriate, by a summary judgment motion or motions and perhaps a very short trial. Obviously important to these proceedings was the licensing history of the allegedly infringed photos, which could have a significant bearing on the fair use defense, actual damages in the event of liability, and perhaps other issues as well. And in view of the representation of plaintiff's counsel at the initial conference that plaintiff had such information, defense counsel had every right to anticipate that documents evidencing any such licensing history would be forthcoming pursuant to Rule 26(a) and their document request. But none were. And Bauer now finds itself — post the close of the discovery period — facing a motion for partial summary [*18] judgment motion as to liability, a previously unmade claim that these photos had been licensed to Getty and Matrix, and still no documentary evidence of any such licenses, let alone any information at all about the economic terms of any such licenses. Now it has before it a need for reopened discovery of plaintiff, Getty, and Matrix — the last of which is based in the United Kingdom and may not be subject to process here and a waste of some level of effort between the date of the initial conference and the present. Of course, much of this harm may be remedied by appropriate relief. But this simply is not the way in which this case should have been handled by plaintiff's counsel.

That said, dismissal "is a drastic remedy that should be imposed only in extreme

---

[28] *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 175-76 (2d Cir.) (footnote omitted), *cert. denied*, 139 S. Ct. 595, 202 L. Ed. 2d 428 (2018).

Sands v. Bauer Media Grp. USA, LLC

circumstances."[29] The fact that much of the harm that plaintiff's counsel has caused can be undone militates strongly against it Nevertheless, the imposition of sanctions is appropriate.

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss the action as a sanction for alleged discovery misconduct or, alternatively, to strike portions of the evidence that plaintiff has submitted in support of a motion for summary judgment **[*19]** or require a bond as security for costs and fees pursuant to Local Civ, R. 54.2 [DI 38], is granted to the extent that plaintiffs counsel, Mr. Liebowitz, shall pay defendant's reasonable attorney's fees, for making and litigating this motion, and plaintiff shall show cause, on or before October 2, 2019, why the Court should not condition plaintiff's ability to proceed with this action on the posting of a bond or other sufficient security in the amount of $50,000 for costs and attorney's fees in this action, and otherwise denied. Plaintiff's motion for partial summary judgment [DI 25] is denied.

SO ORDERED,

Dated: September 18, 2019

/s/ Lewis A. Kaplan

Lewis A. Kaplan

United States District Judge

[29] *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988).